[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 5, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-11730
Non-Argument Calendar

_____

D.C. Docket No. 92-00312-CR-C-J

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY A. PHILLIPS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Alabama

_____

**(April 5, 2002)**

Before CARNES, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Gary A. Phillips ("Phillips") appeals his sentence for conspiracy to commit

robbery, in violation of 18 U.S.C. § 371; bank robbery with the use of a dangerous

weapon, in violation of 18 U.S.C. § 2113; and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). Phillips argues that the district court erred by (1) increasing his base offense level pursuant to the "vulnerable victim" enhancement of U.S.S.G. § 3A1.1, and (2) increasing his base offense level under U.S.S.G. § 3B1.1 for his role as a leader or organizer of the offense.

We review for plain error Phillips's argument based on the district court's application of the "vulnerable victim" enhancement, which he raises for the first time on appeal. See United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999) (reviewing challenge to sentencing enhancement for plain error where defendant failed to object to district court's findings of fact and sentencing calculations); see also United States v. Olano, 507 U.S. 725, 730-32, 113 S. Ct. 1770, 1776-77, 123 L. Ed. 2d 508 (1993). We will correct plain error only where (1) there is an error; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of a judicial proceeding. See United States v. Chisholm, 73 F.3d 304, 307 (11th Cir. 1996).

A district court's upward adjustment of a defendant's Guidelines offense level due to his status as a leader or organizer under U.S.S.G. § 3B1.1 is a finding of fact reviewed only for clear error. See United States v. De Varon, 175 F.3d 930,

2

937 (11th Cir. 1999) (en banc) ("This Court has long and repeatedly held that a district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error.").

Upon thorough review of the record, as well as careful consideration of the parties' briefs, we find no reversible error and affirm.

I.

The facts relevant to Phillips's sentencing issues are straightforward. A jury convicted Phillips of conspiracy to commit robbery, bank robbery with the use of a dangerous weapon, and possession of an unregistered firearm. Prior to trial, Phillips's co-defendants, Jeanette Booth Phillips ("Jeanette Phillips") and Ricky Stripling ("Stripling"), pled guilty as charged and agreed to testify at trial for the government. The Presentence Investigation Report ("PSI") provided that Phillips and his co-defendants participated in an armed bank robbery yielding $43,503.63. On November 6, 1992, Jeanette Phillips and Stripling entered the Traders and Farmers Bank in rural Arley, Alabama[1] at approximately 11:00 a.m. Both Jeanette Phillips and Stripling were wearing ski masks, camouflage clothing, and latex

---

[1] According to the United States Census Bureau's 1990 census figures, Arley's estimated population was 338. We take judicial notice of these census figures. See Fed. R. Evid. 201(b); see also Hollis v. Davis, 941 F.2d 1471, 1474 (11th Cir. 1991) (taking judicial notice of census data); Moore v. Comfed Savings Bank, 908 F.2d 834, 841 n.4 (11th Cir. 1990) (same) (citing Fed. R. Evid. 201(b)).

gloves. They ordered the bank tellers to fill two gym bags with money and directed the other bank employees to lie on the floor. Jeanette Phillips brandished a .38 caliber revolver and Stripling carried a sawed-off shotgun. They told the bank personnel that they had a police scanner, and that if they heard police coming they would kill everyone in the bank.

During the robbery, Phillips waited in the get-away car and monitored a police scanner. Phillips was armed with a .357 caliber pistol, a .44 caliber pistol, and a .30 caliber carbine assault rife. At trial, Stripling testified that Phillips first suggested the idea of a bank robbery. Phillips had worked in law enforcement since 1977, and was the former Chief of Police in the nearby town of Parrish, Alabama. Phillips indicated to Stripling that he was familiar with the police situation in Arley, which had, according to Phillips, only one officer who worked mostly at night. Stripling and Jeanette Phillips both stated that Phillips selected Traders and Farmers Bank in Arley because it was located in a small town with little police presence. Phillips also provided the guns for the heist. Jeanette Phillips testified that Gary Phillips agreed to "take care of all the details," purchased the ski masks and gym bags for use in the robbery, and gave her a gun and showed her how to use it. Phillips indicated to Stripling that he had found the

4

"perfect" bank: "It's a little bitty town and real simple. It's easy. Taking candy from a baby."

Phillips testified in his own defense. He admitted his planning role, which had been described by his co-defendants, and that he was responsible for purchasing and programming the police scanner, as well as buying the ski masks and gym bags. Phillips described how he had practiced the escape route by going inside of the bank to "check it out." Phillips contended, however, that he had a last minute change of heart and did not accompany his co-defendants to the bank on November 6, 1992. Plainly, the jury disbelieved him, entering convictions on three counts.

Based on these facts, the PSI assessed Phillips a two-level upward adjustment pursuant to the "vulnerable victim" guideline, U.S.S.G. § 3A1.1. The PSI also recommended a two-level upward adjustment for Phillips's role as an organizer or leader, U.S.S.G. § 3B1.1(c), noting Phillips's higher educational level than his co-defendants, his selection of the target bank, his role in planning the robbery, and the statements from his co-defendants identifying him as the leader of the scheme. Over Phillips's objection to the § 3B1.1(c) enhancement, the district court sentenced Phillips to a 151-month term of imprisonment for the robbery conviction, a 60-month term of imprisonment for the conspiracy conviction, and a

5

10-year term for the possession of a firearm conviction, with all sentences to run concurrently. Notably, Phillips did not object to the "vulnerable victim" guideline enhancement.

Phillips did not timely file a direct appeal of his conviction or sentence, but subsequently filed a 28 U.S.C. § 2255 motion, seeking leave to file an out-of-time appeal based on the alleged ineffective assistance of his trial counsel, who did not file a direct appeal from Phillips's conviction and sentence. The district court granted Phillips leave to file an out-of-time appeal based on the fact that the court did not advise Phillips at sentencing of his right to appeal in forma pauperis.

On appeal in Phillips I, we dismissed Phillips's case as untimely and set forth a procedure for district courts to follow when granting an out-of-time appeal, noting that Phillips could file a Fed. R. Civ. P. 60(b)(6) motion to relieve him from the operation of that part of the district court's § 2255 order which put forward the wrong remedy for his out-of-time appeal. See United States v. Phillips, 225 F.3d 1198 (11th Cir. 2000). Phillips then filed a Rule 60(b)(6) motion, which the district court granted. On March 27, 2001, the district court again adopted the PSI's findings and recommendation, and re-sentenced Phillips to the same sentence imposed in 1993 after the sentencing hearing. This appeal followed.

II.

6

Phillips challenges his sentence on two grounds: (1) the application of the "vulnerable victim" two-level enhancement, and (2) the application of the two-level enhancement based on his leadership role in the offense. We address each in turn.

A.

Phillips first argues that the district court erred by applying the "vulnerable victim" enhancer after finding that the bank tellers were vulnerable victims under § 3A1.1(b). The Sentencing Guidelines provide for a two-level increase if the defendant knew or should have known that a victim of the offense was a vulnerable victim. See U.S.S.G. § 3A1.1(b). The applicability of the "vulnerable victim" enhancement must be determined on a case-by-case basis, and is appropriate where the defendant knows that the victim has "unique characteristics" that make the victim more vulnerable to the crime than other potential victims of the crime. See United States v. Malone, 78 F.3d 518, 521 (11th Cir. 1996).

In this analysis, the focus is on the defendant's perception of the victim's vulnerability to the offense. See United States v. Page, 69 F.3d 482, 488 (11th Cir. 1995); United States v. Long, 935 F.2d 1207, 1211 (11th Cir. 1991) ("[T]he applicability of section 3A1.1 turns on the defendant's decision to target the victim."). "[T]o determine whether defendants have targeted 'vulnerable victims,'

7

we look to the facts known to defendants when they decided to target the victims." Page, 69 F.3d at 489 (citation and internal quotation marks omitted).

Phillips asserts that the PSI's citation to United States v. Jones, 899 F.2d 1097 (11th Cir. 1990) (holding that bank tellers are vulnerable victims because they are likely targets of criminal conduct), requires reversal because it was overruled by United States v. Morrill, 984 F.2d 1136, 1138 (11th Cir. 1993) (en banc) (holding that a bank teller is not automatically vulnerable by virtue of his or her position as a teller). We disagree. In Morrill, we held that bank tellers, as a class, are not per se vulnerable victims, within the meaning of § 3A1.1 because "[b]ank tellers are typical victims of bank robberies." 984 F.2d at 1138. Rather, the "vulnerable victim" enhancement applies "when a particular teller-victim possesses unique characteristics which make him or her more vulnerable or susceptible to robbery than ordinary bank robbery victims and thus make the particular bank robber more culpable than the ordinary perpetrator." Id. Contrary to Phillips's argument, however, we did not conclude in Morrill that bank tellers may never be vulnerable victims for purposes of the § 3A1.1 enhancement. Indeed, such "[s]weeping presumptions are not favored by section 3A1.1" since "the inquiry conducted by a sentencing judge to determine the applicability of section 3A1.1 is . . . highly case-specific." Long, 935 F.2d at 1210.

In United States v. Segien, 986 F.2d 439, 440-41 (11th Cir. 1993), which was decided one month after Phillips's sentencing, we held that "in sentencing a bank robber, the trial court should make a fact-specific determination of what factors, if any, distinguish the teller-victim from ordinary bank tellers and how, if at all, the defendant targeted that teller based on the factors." In this case, the record contains an abundance of evidence to support application of the enhancer, including: (1) Stripling's and Jeanette Phillips's testimonies that Phillips (a former Police Chief in a nearby town) selected the Traders and Farmers Bank in rural Alabama precisely because of the size of the town and its reduced police presence; (2) Phillips's perception of the bank as "perfect" because "it's [in] a little bitty town and real simple. It's easy. Taking candy from a baby"; (3) the probation officer found, and the district court adopted the finding, that Phillips selected "a rural bank to rob at a time when he knew police would not be in the area."

Focusing on Phillips's intent, as we must in evaluating the § 3A1.1 enhancement, we cannot find any error, let alone plain error, in the district court's application of the "vulnerable victim" enhancement based on its conclusion that these bank tellers were "vulnerable victims," within the meaning of § 3A1.1. While "a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank," U.S.S.G. § 3A1.1, comment. (n.2), the tellers in this

9

case had the additional "unique characteristics," as perceived by Phillips, of being located in a remote location with little or no police protection. Cf. Malone, 78 F.3d at 523 (approving imposition of vulnerable victim enhancement appropriate in car-jacking case where defendant targeted a cab driver knowing that the cab driver had the unique obligation to drive to an isolated pick-up point of the car-jacker's choice and then let him into the cab). The evidence was plainly sufficient to support the district court's sentencing enhancement.

B.

We are likewise unpersuaded by Phillips's argument that the district court erred by enhancing his sentence as an organizer or leader. If a defendant was an organizer, leader, manager, or supervisor of the criminal activity, his offense level may be increased by two. See U.S.S.G. § 3B1.1(c). "[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v. Jimenez, 224 F.3d 1243, 1251 (11th Cir. 2000), cert. denied, 122 S.Ct. 620 (2001). In distinguishing a leadership role, the district court should consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation

10

in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n. 4).

In this case, there was abundant evidence to support the district court's finding that Phillips was an organizer and leader of the bank robbery, including: (1) both co-defendants testified that Phillips did most of the planning and preparation for the bank robbery, including selecting the bank; (2) Stripling testified that Phillips first suggested the idea of a bank robbery, selected the bank because it was located in a small town with little police presence, and provided the guns; (3) Jeanette Phillips testified that Gary Phillips agreed to "take care of all the details," purchased the ski masks and bags for use in the robbery, and gave her a gun and showed her how to use it; (4) Phillips himself testified that he purchased the police scanner and the guns for use in the robbery and helped draw a diagram of the bank; (5) during the robbery, Phillips waited in the get-away car and monitored the police scanner while his two co-defendants committed the robbery. On this record, we can find no clear error in the district court's conclusion that Phillips organized, led, managed or supervised one or more other participants.

**AFFIRMED.**