[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13104
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20291-CMA-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WONDERA EASON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 4, 2014)

Before TJOFLAT, JORDAN, and BLACK, Circuit Judges.

PER CURIAM:

Wondera Eason appeals her conviction and 120-month sentence after a jury

found her guilty of conspiring to commit health care fraud in violation of 18 U.S.C.

§§ 1347, 1349.  Eason had been the medical records director at Health Care Solutions (HCS), a partial hospitalization program providing intensive group psychotherapy services at three locations: East Miami (HCS-East), West Miami (HCS-West), and North Carolina (HSC-NC).  The Government alleged Eason defrauded Medicare by submitting claims for services that were not provided or were medically inappropriate, by forging signatures on forms submitted to Medicare, by directing therapists to fabricate medical records, and by helping conceal HCS's fraud during on-site audits by Medicare.  A jury found Eason guilty, and the district court sentenced Eason to 120 months' imprisonment.

On appeal, Eason challenges the sufficiency of the evidence against her,[1] a number of the district court's evidentiary rulings, two sentencing enhancements, and the substantive reasonableness of her 120-month sentence.  Upon review, we affirm.

---

[1] Eason also appeals the district court's denial of her motion under Federal Rule of Criminal Procedure 29 for a judgment of acquittal.  We consider this issue together with Eason's challenge to the sufficiency of the evidence because the analysis is identical. *Compare United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) ("We will uphold the denial of a Rule 29 motion if we determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." (internal quotation marks omitted)) *and United States v. Thompson*, 422 F.3d 1285, 1290 (11th Cir. 2005) ("When a jury verdict is challenged on the ground of sufficiency of the evidence, the reviewing court must view the evidence in the light most favorable to the government and determine whether the jury could have found the defendant guilty beyond a reasonable doubt." (internal quotation marks omitted)).

## I.  DISCUSSION

A.    *Sufficiency of the Evidence*[2]

Viewing the evidence in the light most favorable to the Government with all inferences and credibility determinations made in the Government's favor, we conclude that a reasonable jury could have found Eason guilty beyond a reasonable doubt.  *See United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).  To find Eason guilty under § 1347, the jury had to determine beyond a reasonable doubt "(1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it."  *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) (internal quotation marks omitted).  Testimony from a variety of HCS employees established that a conspiracy existed between them to defraud Medicare by submitting claims for therapy sessions for patients who either did not participate in the sessions or for whom the sessions were medically inappropriate due to cognitive deficits that precluded them from participating in or benefitting from the sessions.  HCS employees also testified about the fabrication of progress notes concealing that some therapy sessions actually consisted of picnics or film viewings rather than billable treatments.  Accordingly, sufficient evidence established the first element of Eason's offense.

---

[2] We review both a challenge to the sufficiency of the evidence and a district court's denial of a motion for a judgment of acquittal under Rule 29 de novo.  *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).

3

The evidence was also sufficient to show that Eason knew of the essential nature of the conspiracy.  *See id.*  Eason was in charge of the medical records at all three HCS locations, and HCS employees Alexandra Haynes and John Thoen both testified that the medical records were the most important aspect of the fraud because they were the primary basis of Medicare's decision whether to pay HCS's claims.  Similar evidence supported the jury's finding that Eason knowingly and voluntarily jointed the conspiracy.  Thoen testified that he and Armando Gonzalez, HCS's owner, explained to Eason that her role with HCS was to ensure that all progress notes were accounted for in HCS's Medicare claims, even for patients who had not received treatment, and Eason subsequently accepted a position with HCS-NC.  In addition, In her role with HCS, Eason directed Sarah Keller, Haynes, and Serena Joslin, other HCS employees, to fabricate medical records, and Haynes and Joslin each observed Eason forging signatures on her own, all in furtherance of the conspiracy.  This evidence provided a sufficient basis for the jury to find beyond a reasonable doubt that Eason knowingly joined the conspiracy.[3]  *See Vernon*, 723 F.3d at 1274.

---

[3] Eason's argument that the Government failed to show that she committed any overt act in furtherance of the conspiracy fails first because an overt act is not required for a violation of § 1349 and second because the foregoing evidence establishes a variety of overt acts in furtherance of the conspiracy, including forging documents and directing others to forge documents.

4

Eason asks us to question the motives of her co-conspirators who testified against her, but we make all credibility determinations in favor of the verdict, and Eason has not advanced any argument that the testimony against her was incredible as a matter of law. *See United States v. Thompson*, 422 F.3d 1285, 1291 (11th Cir. 2005). Thus, a reasonable jury could have found beyond a reasonable doubt that Eason was guilty of conspiracy to commit health care fraud. Accordingly, there was sufficient evidence to support Eason's conviction, and for the same reasons, the district court did not err in denying Eason's motion for judgment of acquittal. *See Gamory*, 635 F.3d at 497.

B.      *Evidentiary Rulings*[4]

Eason challenges ten of the district court's evidentiary rulings. In three cases, Eason raises an argument for the first time on appeal. Accordingly, we review those arguments only for plain error, *United States v. Wetherald*, 636 F.3d 1315, 1320 (11th Cir. 2011), and we find none. In the remaining seven cases, we conclude the district court did not abuse its discretion because none of these rulings were "manifestly erroneous." *See United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (internal quotation marks omitted). We address each of the challenged evidentiary rulings in turn.

---

[4] We review a district court's evidentiary rulings for abuse of discretion and the factual findings underlying those rulings for clear error. *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012).

First, Eason challenges as unduly prejudicial the admission of Gema Pampin's response to the Government's question, "Is there anyone in the courtroom here today that you conspired to commit healthcare fraud with?" in which she stated that she conspired with Eason. We review the admission of this statement only for plain error because, at trial, Eason challenged the question as calling for a legal conclusion, while on appeal, she asserts Pampin's statement was prejudicial. *Wetherald*, 636 F.3d 1315, 1320. Because Eason has identified no precedent from either this Court or the Supreme Court establishing that a coconspirator's statement that she conspired with a defendant is prejudicial, she cannot show that this ruling constituted plain error. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

Second, Eason challenges the admission of Thoen's testimony that his drug activity did not impair his ability to understand what was going on at HCS on the bases that it calls for a legal conclusion and that Thoen, as a lay witness, was not qualified to testify on that subject. Eason raised the latter argument for the first time on appeal, so we review that argument only for plain error, *Wetherald*, 636 F.3d at 1320, and conclude that the district court committed none because there is no precedent from this Court or the Supreme Court establishing when a lay witness may testify about his ability to understand what was happening around him despite drug use, *see Lejarde-Rada*, 319 F.3d at 1291. As for Eason's argument that

6

Thoen's statement supplied a legal conclusion, we disagree.  Thoen's statement concerned his personal perception, not any legal implications of his conduct.  *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).  Put simply, whether drug use has affected one's ability to perceive is not a question of law.

Third, Eason challenges the admission of Thoen's testimony concerning conversations he had with Gonzalez about bringing Eason on to work at HCS-NC on the basis that the testimony was hearsay and that admitting it violated Eason's right to confront the witnesses testifying against her under the Sixth Amendment. *See United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009) (citing *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)).  Eason raised her argument under the Confrontation Clause for the first time on appeal, so we review this argument only for plain error.  *Wetherald*, 636 F.3d 1315, 1320.  The district court did not commit plain error because Gonzalez's statements were made in a private, informal conversation and not "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52.  And Thoen's statement was not hearsay under Fed. R. Evid. 801(d)(2)(E) because it was offered against Eason and "was made by [Eason's] coconspirator during and in furtherance of the conspiracy."

7

Fourth, Eason challenges Thoen's testimony about how he learned Gonzalez was paying Eason's rent while she was in North Carolina as irrelevant. This testimony was relevant, however, because it showed additional compensation Eason received for participating in the fraud and, if true, tended to make it more likely that she would have agreed to participate.[5] *See* Fed. R. Evid. 401.

Fifth, Eason challenges as hearsay Thoen's testimony that Eason directed HCS therapists not to mention that patients had certain cognitive impairments (e.g., dementia, mental retardation), that patients were not participating in therapy sessions, or to mention other "buzz words" in patients' progress notes because Medicare would not pay the claims if the progress notes included these buzz words. This statement was not hearsay under Fed. R. Evid. 801(d)(2)(A) because it was the statement of an opposing party, Eason.

Sixth, Eason challenges Thoen's testimony concerning a staff discussion about a Medicare review as hearsay, but this testimony was not hearsay because it was not offered for the truth of what it asserted. *See* Fed. R. Evid. 801(c)(2). Thoen testified that when he entered an office, staff were discussing a letter Medicare had sent HCS putting it under review, but Thoen's statement was not offered to show that the staff were accurate that HCS had received a letter. Rather,

---

[5] Eason also challenged Thoen's statement that she told him that Gonzalez was paying her rent while she was in North Carolina as hearsay, but this statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2)(A) because it was the statement of an opposing party.

Thoen's statement was offered to show how he became aware of the review. Moreover, Thoen also testified that Gonzalez gave him a copy of the letter in question, so even if it was erroneous to admit Thoen's statement about the staff discussion, such error was harmless. *See United States v. Breitweiser*, 357 F.3d 1249, 1254 (11th Cir. 2004).

Seventh, Eason challenges as hearsay Keller's testimony that she believed some of HCS's patients were inappropriate for group therapy because they were too elderly and had cognitive impairments that kept them from knowing what they were doing at HCS, how they got there, or even their own names. This testimony did not contain a statement by someone other than Keller and therefore is not hearsay. Fed. R. Evid. 801(c).

Similarly, Eason's eighth objection is that Pampin's testimony that she fabricated all types of Medicare documents (e.g., initial screening documents, patient histories, treatment plans, psychotherapy notes) constituted hearsay, but nothing in Pampin's testimony contained the statement of another offered to prove the truth of the matter asserted. Accordingly, this testimony was not hearsay. Fed. R. Evid. 801(c).

Ninth, Eason challenges as hearsay Special Agent Bryan Piper's testimony that Eason told him Gonzalez had instructed the therapists that each file to be submitted to Medicare had to contain four progress notes. Eason's statement was

not hearsay because it was a made by the opposing party, and Gonzalez's statement was not hearsay because it was made by a coconspirator during and in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(A), (E).

Finally, Eason argues a chart comparing HCS employees' salaries was substantially more prejudicial than probative and should have been excluded under Fed. R. Evid. 403.  However, Eason has not explained why the chart was prejudicial in light of the fact that Eason's salary was comparable to most HCS employees and significantly less than Thoen's.  And the fact she was compensated for her work with HCS was surely relevant. to whether she participated in its Medicare scheme.  For these reasons, we cannot conclude that the district court abused its discretion in admitting the chart.

In light of the foregoing, Eason has failed to establish reversible error as to any of the district court's evidentiary rulings. [6]

C.    *Sentencing Enhancements*

Eason challenges the district court's decision to impose a three-level enhancement based on her role as a manager or supervisor of criminal activity

---

[6] Eason also argues that the cumulative effect of the district court's erroneous evidentiary rulings deprived her of a fair trial.  *See United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009).  However, as we have explained, the district court did not make multiple errors, so there can be no cumulative effect warranting reversal.  *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004).

involving five or more participants under U.S.S.G. § 3B1.1[7] and a two-level enhancement for an offense involving sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C).[8]  Neither of these enhancements was clearly erroneous.  The enhancement for Eason's role as a manager was supported by evidence that she instructed other HCS employees to fabricate medical records, as well as Pampin's testimony that Eason was part of Gonzalez's inner circle and that Gonzalez, who owned HCS, relied on Eason's advice in making important decisions.  *See United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006).[9]

Similarly, the district court did not clearly err by imposing an enhancement for the use of sophisticated means because the scheme spanned six years and involved coordinated efforts to produce, compile, and store fraudulent documents at three locations across two states.  *See United States v. Ghertler*, 605 F.3d 1256, 1268 (11th Cir. 2010) (affirming application of a sophisticated-means

---

[7] "A district court's upward adjustment of a defendant's Guidelines offense level due to his status as a leader or organizer under U.S.S.G. § 3B1.1 is a finding of fact reviewed only for clear error." *United States v. Phillips*, 287 F.3d 1053, 1055 (11th Cir. 2002).

[8] "We review the district court's findings of fact related to the imposition of sentencing enhancements, including a finding that the defendant used sophisticated means, for clear error." *United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009).

[9] For the first time on appeal, Eason argues application of the role enhancement violates her Fifth and Sixth Amendment rights because the operative indictment did not support the enhancement.  We review this argument for plain error, *see United States v. Shultz*, 565 F.3d 1353, 1356 (11th Cir. 2009), and find none because unindicted conduct can serve as the basis for a sentencing enhancement, *United States v. Nyhuis*, 8 F.3d 731, 744 (11th Cir. 1993), and a sentencing court can make its own findings of fact on issues that do not increase the statutory minimum or maximum sentences applicable to a defendant, *see United States v. Hunt*, 459 F.3d 1180, 1182 (11th Cir. 2006); *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013).

enhancement based on "the totality of [the] activities carried out over an extended period of time). The Government also provided evidence HCS paid kickbacks to assisted-living facilities in exchange for patients and that HCS funneled money to Eason through a company she owned called Alberta Safe Haven. *See* U.S.S.G. § 2B1.1(b)(10)(C) cmt. 9(B). For these reasons, the district court did not commit clear error by imposing either of the foregoing sentencing enhancements.

D.    *Substantive Reasonableness*[10]

Eason's challenge to the substantive reasonableness of her sentence fails because she cannot show that the sentence the district court imposed falls outside the range of reasonable sentences. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc). Examining the totality of the circumstances, the statutory factors at 18 U.S.C. § 3553(a) sufficiently support Eason's sentence. *See United States v. Gonzalez*, 550 F.3d 1319. The record indicates the district court gave careful consideration to whether Eason's sentence would promote respect for the law and account for the seriousness of her offense and her role in the scheme. The district court also considered whether the sentence it imposed would produce disparities with Eason's codefendants and determined that the sentences were consistent because, unlike Eason, her codefendants had accepted responsibility for their crimes. Eason has not shown that the district court failed to consider any

---

[10] We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1188-89 (11th Cir. 2010) (en banc).

sentencing factors that were due significant weight, gave significant weight to an improper factor, or otherwise committed a clear error of judgment in calculating Eason's sentence, which we note falls within the applicable guideline range. *See Irey*, 612 F.3d at 1189; *see also United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (explaining that we ordinarily expect sentences within the guidelines to be reasonable). For these reasons, we must reject Eason's argument that her sentence was substantively unreasonable.

## II.    CONCLUSION

Having carefully considered each of Eason's challenges to her conviction and sentence, we conclude the district court did not commit any reversible error.

**AFFIRMED.**

13