[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11323
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cr-00353-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAMETHEUS TERENCE DOUGLAS,
a.k.a. Mephy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 7, 2019)

Before JORDAN, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Lametheus Terence Douglas appeals his 188-month sentence following his guilty plea to one count of conspiring to possess with the intent to distribute 100 kilograms or more of marijuana. For the reasons that follow, we affirm Douglas's sentence.

I.

In 2016, Douglas and ten others were indicted on charges of conspiring to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1),[1] (b)(1)(A),[2] 846[3] (Count One), and conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1)(A)[4] (Count Two). After being charged, Douglas initially pleaded not guilty to both counts, and was granted pretrial release, subject to certain conditions. One condition of his release was a

---

[1] "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).

[2] "In the case of a violation of subsection (a) of this section involving. . . 1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana . . . ." 21 U.S.C. § 841(b)(1)(A)(vii).

[3] "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

[4] "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity" shall be fined or imprisoned. 18 U.S.C. § 1956(a)(1)(A)(i).

2

prohibition on violating any federal, state, or local law while on release; another condition prohibited him from traveling outside the Southern District of Georgia.

Several underlying facts are relevant to the issues now raised on appeal.  The first is that Douglas applied to the court for a court-appointed attorney in February 2017.  In a supporting affidavit, he indicated that he was unemployed, had no assets, and had not received any income from any source in the year before completing the affidavit.  He also indicated that he had no cash on hand or money in savings or checking accounts.

In June 2017, after one of his codefendants decided to cooperate with the government, Douglas sent a copy of the DEA interview report to an alleged drug dealer in Philadelphia, Pennsylvania.  The report had been prepared by the Drug Enforcement Administration ("DEA") and Douglas's role in sending the report was uncovered when the FBI executed a search warrant on the Philadelphia man's phone.

In July 2017, Douglas completed another financial affidavit indicating that he was unemployed, and his only assets were personal belongings valued at approximately $400.

From August to October 2017, Douglas's conduct on social media posed a variety of issues that are now relevant to his sentencing.  In August 2017, Douglas viewed a draft of the Presentence Investigation Report ("PSI"), which contained

the inculpatory information the government gathered from the DEA's interview of Douglas's codefendant who was cooperating with the government against Douglas. Douglas then proceeded to post a series of videos on his Instagram account explaining his criminal charges and identifying—by alias—his codefendant as the person who cooperated with the government. In September 2017, another Instagram user posted a photo of Douglas's codefendant with a caption describing him as someone who "told on 3+ ppls" but was allowed to "coexist." The caption concluded that "#Atl" was harboring "[5 rat emoticons]." After the poster "tagged" several individuals, including Douglas, Douglas posted several comments on the photo. In addition to being quite obscene, Douglas's comments generally: (1) referred to his codefendant as the individual responsible for "sending [him] to prison," (2) directed others to publicize the codefendant's cooperation with the government, and (3) reiterated that his codefendant was a "rat."

During September and October 2017, Douglas also posted several photos on Instagram that suggested he was in Atlanta, which is located outside the Southern District of Georgia. One photo showed a bill from an Atlanta restaurant for more than $400 of alcohol. Another photo displayed a large amount of cash in a shoebox with a caption that suggested he was planning to spend it at the same restaurant soon. Yet another photo depicted a large amount of cash in a large, clear plastic bag; the photo was accompanied by references to an Atlanta nightclub.

4

On October 15, 2017, Douglas submitted to a urinalysis and tested positive for oxycodone, which Douglas claimed he had taken to relieve a toothache. Although defense counsel provided medical records showing that a CVS clinic had treated Douglas on October 5, the clinic did not prescribe oxycodone to him. Douglas claimed the pill was left over from an old prescription, but could not provide a copy of a prescription for the drug or the prescription bottle from which the pill was supposedly left over.

On December 5, 2017, an officer arrested Douglas in Statesboro, Georgia, based on a federal warrant for bond violations.[5]  When Douglas was arrested, he had $5,941 in cash on him.

Shortly thereafter, Douglas pleaded guilty to a lesser charge underlying Count One (conspiracy to possess with intent to distribute 100 kilograms or more of marijuana), in exchange for dismissal of Count Two (conspiracy to launder money).  The court accepted the plea.

The PSI assigned Douglas a base offense level of 30, under U.S.S.G. § 2D1.1(c)(5).  Douglas received a four-level enhancement, pursuant to § 3B1.1(a), because he was the leader of criminal activity that involved five or more participants.  He also received a two-level enhancement for obstruction of justice,

---

[5] Douglas later stipulated that he violated the travel condition of his release and agreed to the revocation of his bond.

pursuant to § 3C1.1, for attempting to intimidate his codefendant and for providing materially false information to the court by failing to disclose all of his assets in his financial affidavits.  The PSI did not reduce Douglas's sentence based on acceptance of responsibility, pursuant to § 3E1.1, because of his obstruction of justice behavior and because he took oxycodone.  Based on a total offense level of 36 and a criminal history category of I, the Guideline range was 188 to 235 months' imprisonment.

Prior to sentencing, Douglas objected to the PSI.  At the sentencing hearing, both sides presented evidence and testimony, and the court ultimately overruled Douglas's objections to the PSI.  The district court adopted the PSI's findings and conclusions, sentenced Douglas to 188 months' imprisonment on Count One, and dismissed Count Two pursuant to the plea agreement.

Following entry of judgment, Douglas appealed his sentence.  He raises three issues on appeal.  First, he argues that he was not a leader of the drug distribution scheme and the district court erred by enhancing his offense level under the Sentencing Guidelines on that basis.  Second, Douglas argues that his social media activity did not constitute intimidation of his codefendant and he did not lie on his financial affidavit, so the district court's sentence enhancement for obstruction of justice was also erroneous.  Lastly, Douglas argues that he should have been granted a reduction for acceptance of responsibility, because although he took oxycodone in

violation of the terms of his pretrial release, he only used the drug to treat a toothache.  We address each issue in turn.

## II.

Under the Sentencing Guidelines, the district court may increase a defendant's base offense level by four levels if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."[6]  U.S.S.G. § 3B1.1(a).  "A district court's upward adjustment of a defendant's Guidelines offense level due to his status as a leader or organizer under U.S.S.G. § 3B1.1 is a finding of fact reviewed only for clear error."  *United States v. Phillips*, 287 F.3d 1053, 1055 (11th Cir. 2002).  The sentencing judge "makes the factual determinations for the applicability of the § 3B1.1 enhancement on a case-by-case basis, and we give deference to the factfindings of the sentencing judge."  *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005).

This Court has previously "affirmed a finding that a defendant played a leadership or organizational role under U.S.S.G. § 3B1.1(a), [when] there was evidence that the defendant had recruited participants, had instructed participants, or had wielded decision-making authority."  *United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010). *See also* U.S.S.G. § 3B1.1, cmt. n.4.[7]

---

[6] It is undisputed that the conspiracy involved five or more participants. The only issue before us is whether the district court correctly applied the "organizer or leader" enhancement.

[7] "In distinguishing a leadership and organizational role from one of mere management or

The district court did not err in finding that Douglas was a "leader or organizer" because "[t]he assertion of control or influence over only one individual is sufficient to support the role enhancement." *United States v. Mandhai*, 375 F.3d 1243, 1248 (11th Cir. 2004) (citing *United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999)). *See also United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing.").

Douglas insists that he was not a leader but was instead a "roll-with-it kind of guy." We acknowledge that some testimony suggested Douglas was not involved in all aspects of the conspiracy. However, the district court was not required to find that Douglas was the single mastermind of the entire scheme in order to apply the leadership enhancement under U.S.S.G. § 3B1.1(a). Testimony that Douglas was not involved in *all* aspects of the conspiracy does not negate his status as a leader for sentencing purposes because such testimony does not conflict

---

supervision, titles such as 'kingpin' or 'boss' are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense." U.S.S.G. § 3B1.1, cmt. n.4.

with Douglas's exercise of leadership and control in other aspects of the scheme. *See Caraballo*, 595 F.3d at 1231. "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, cmt. n.4.

Overall, this record supports the district court's finding that Douglas was a leader and organizer of the scheme. Douglas was involved in buying marijuana in Texas and California, shipping it to Atlanta for resale, and directing the actions of several individuals involved with the scheme. Multiple codefendants testified that they funneled drug money through their bank accounts at the direction of Douglas or accepted and shipped packages of marijuana for him. And Douglas was arrested with more than 100 pounds of marijuana, which indicates that he played an important and trusted role in the scheme. We cannot say that it was clearly erroneous for the district court to conclude that Douglas played a leadership or organizational role under U.S.S.G. § 3B1.1(a).

Because Douglas asserted control and influence over several people in the drug conspiracy, the district court did not clearly err in applying the four-level leadership enhancement.

### III.

In addition to his four-level enhancement for his role as a leader, Douglas received a two-level enhancement for obstruction of justice, pursuant to § 3C1.1,

9

for attempting to intimidate his codefendant and for providing materially false information to the court by failing to disclose all of his assets in his financial affidavits.

A two-level obstruction-of-justice enhancement is warranted if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense" and the obstructive conduct related either to the defendant's offense and relevant conduct or to a closely related offense.  U.S.S.G. § 3C1.1.  The enhancement applies for threatening, intimidating, or otherwise unlawfully influencing a codefendant, even if it was merely an attempt.  *See id.*; *id.* § 3C1.1, cmt. n.4(A).

"In reviewing the district court's imposition of an obstruction-of-justice sentencing enhancement, we review the district court's factual findings for clear error and we review its application of the factual findings to the sentencing guidelines *de novo*."  *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011).  To support a finding of clear error, the finding of the district court must leave us with a "definite and firm conviction that a mistake has been committed."  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted).

The obstruction-of-justice enhancement can also apply when a defendant makes false statements to obtain court-appointed counsel.  *See United States v.*

10

*Ruff*, 79 F.3d 123, 126 (11th Cir. 1996).  The government insists that there is an ample basis for finding that Douglas misled the court in his financial affidavit in which he claimed to have no money or employment.  Douglas made posts on social media showing large amounts of cash in the months following the submission of his affidavit.  He also apparently spent hundreds of dollars in one night at a restaurant.  Further, he had over $5,000 in cash on him when he was arrested months after his affidavit.  Thus, the government argues, it was not clearly erroneous for the district court to find that Douglas had more money than he disclosed on the day he submitted his financial affidavit and, accordingly, that he had obstructed justice by making a false statement to obtain court-appointed counsel.

In contrast, Douglas points to the fact that his affidavit was completed prior to the posting of those pictures and asserts that it showed an honest snapshot of his finances at the time.  Because he had no continuing duty to supplement the financial affidavit, he argues, a finding that he provided materially false information to the court by failing to disclose all of his assets in his financial affidavits was an improper basis for the obstruction enhancement.

Even if we agreed with Douglas that the district court erroneously found that he lied on his financial affidavit,[8] the district court was nevertheless entitled to

_____

[8] We decline to opine whether there is an implied continuing duty for a court-appointed-

11

apply the sentence enhancement to Douglas's offense level for obstruction of justice for attempting to intimidate his codefendant. "[W]e can affirm the district court's judgment on any ground supported by the record." *United States v. Gill*, 864 F.3d 1279, 1280 (11th Cir. 2017).

The record shows that Douglas made multiple concerted efforts to expose, intimidate, and shame a codefendant for cooperating with the government. First, Douglas sent his codefendant's DEA interview report—which showed the codefendant's cooperation with the government—to an alleged drug dealer in Philadelphia. Douglas also made a series of profane posts and comments on social media that were clearly intended to expose and shame his codefendant as a "rat" for cooperating with the government. Furthermore, the codefendant was, in fact, intimidated by Douglas's social media posts and comments. He testified at the sentencing hearing that he felt intimidated by Douglas's comments and posts and by the fact that his cooperation was made known to multiple people on Instagram.

Based on these facts, it was not clearly erroneous for the district court to conclude that Douglas's profane and aggressive comments and posts on social media, combined with his sending a copy of his codefendant's DEA interview report to a drug dealer, were attempts to intimidate his codefendant. Thus, the

---

counseled defendant to update his financial affidavit. Likewise, we decline to consider whether Douglas's failure to supplement his financial affidavit would be, on its own, a proper basis for his obstruction enhancement.

12

district court did not clearly err in applying the two-level enhancement for obstruction of justice, pursuant to § 3C1.1.

IV.

The district court declined to grant Douglas a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1, in light of his obstruction of justice and his pretrial use of oxycodone. We review the district court's decision regarding acceptance of responsibility for clear error. *United States v. Calhoon*, 97 F.3d 518, 531 (11th Cir. 1996). "The district court's determination of whether a defendant is entitled to a reduction for acceptance of responsibility is a finding of fact that is entitled to great deference on appeal and will not be disturbed unless clearly erroneous." *United States v. Kendrick*, 22 F.3d 1066, 1068 (11th Cir. 1994).

The Sentencing Guidelines allow for a decrease in the offense level by two or three points if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. While a guilty plea is significant evidence of acceptance of responsibility, it may be outweighed by other conduct that is inconsistent with acceptance of responsibility. *Id.* § 3E1.1, cmt. n.3. Absent extraordinary circumstances, a defendant who receives an enhancement for obstruction of justice does not deserve a reduction for acceptance of responsibility. *Id.* cmt. n.4.

Douglas makes two arguments for why the district court clearly erred: (1) he did not obstruct justice; and (2) despite testing positive for oxycodone while on pretrial release, he only used the drug for the innocent purpose of treating a painful toothache.  Both are unpersuasive.

First, because Douglas properly received an enhancement for obstruction of justice for the reasons described above, and because he has not shown any extraordinary circumstances, it was not clearly erroneous for the court to deny him an acceptance of responsibility reduction, despite his guilty plea.  U.S.S.G. § 3E1.1, cmt. n.4.

Second, Douglas tested positive for taking oxycodone and did not produce a valid prescription for the drug.  If a defendant does not withdraw from criminal conduct, the court may consider that fact when deciding he is not entitled to a reduction.  *Id.* § 3E1.1, cmt. n.1(B).  Accordingly, "[a] district court does not err in denying the reduction if it concludes that a defendant's drug use after his arrest shows that he has not accepted responsibility and turned away from the lifestyle that motivated his offense."  *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017).

Douglas insists the oxycodone usage was from a leftover prescription and was for the innocent purpose of treating a toothache.  He also heavily emphasizes the fact that he had only a "single positive drug screen in his ten months of pretrial

14

release."  But, although Douglas argued that he took the drug to treat an ailment and that it was left over from a past prescription, he was unable to produce any evidence that the pill came from a past prescription.

Here, it was not clear error for the district court to conclude that Douglas's unprescribed drug use showed that he had not accepted responsibility or turned away from his lifestyle dealing in illegal drugs.  *Mathews*, 874 F.3d at 709.  Even a single positive drug screen can support the district court's conclusion, especially when combined with a failure to produce mitigating evidence that such drug usage was legal and validly prescribed.

Because the obstruction of justice enhancement was proper and because Douglas took an unprescribed controlled substance while on pretrial release, the district court did not clearly err when it denied Douglas an acceptance of responsibility reduction.  Accordingly, we affirm.

**AFFIRMED.**