[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

———————————————

No. 24-11600

Non-Argument Calendar

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

IVAN EMILIO ECHAVARRIA,

Defendant- Appellant.

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00261-VMC-TGW-1

———————————————

Before BRANCH, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Ivan Echavarria appeals his sentence of 240 months' imprisonment for distribution of fentanyl. On appeal, he argues the district court clearly erred by imposing a two-level role enhancement under U.S.S.G. § 3B1.1(c). The government agrees with Echavarria and concedes error. After careful review, we agree with the parties, so we vacate and remand for resentencing.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In August 2023, a grand jury charged Echavarria by indictment with two counts of distributing 40 grams or more of fentanyl, 21 U.S.C. § 841(a)(1), (b)(1)(B) ("Counts One and Two"); and one count of distributing 400 grams or more of fentanyl, 21 U.S.C. § 841(a)(1), (b)(1)(A) ("Count Three"). In January 2024, Echavarria pled guilty to all three counts without a written plea agreement.

A probation officer prepared a presentence investigation report ("PSI") that reported that Echavarria sold an undercover officer suspected fentanyl on December 13, 2022. The substance was sent to the Florida Department of Law Enforcement ("FDLE"), which determined that it was 40.32 grams of a mixture containing a detectable amount of fentanyl. During the sale, Echavarria mentioned to the officer that he was "panicking" because he knew someone who died due to fentanyl use and, while he did not sell or give drugs to the man who died, he knew those involved. He also told the officer that he warns others not to give fentanyl to people

"as is," because it should be cut with other substances to be less strong.

On January 17, 2023, Echavarria again sold the undercover officer suspected fentanyl. The substance was sent to the FDLE, which determined that it was 48.42 grams of a mixture containing a detectable amount of fentanyl. On February 14, 2023, Echavarria once again sold the undercover officer suspected fentanyl. The FDLE later determined that the substance was 929.66 grams of a mixture containing a detectable amount of fentanyl and xylazine. Echavarria was arrested after the February 2023 sale and informed officers that he had a supplier in Tampa, Florida, who "usually had whatever he needed available." In total, the PSI calculated that Echavarria had distributed 1,018.4 grams of a mixture containing a detectable amount of fentanyl.

The PSI grouped all three counts for guidelines purposes and, under U.S.S.G. § 2D1.1(a)(5), calculated a base offense level of 30 based on Echavarria's conviction under 21 U.S.C. § 841(a)(1). It then applied a 3-level total decrease for acceptance of responsibility, under § 3E1.1(a)-(b), producing a total offense level of 27. It calculated Echavarria to have a criminal history score of 13, leading to a criminal history category of VI. *See* U.S.S.G. § ch. 5, pt. A. Based on these calculations, the PSI calculated a guidelines range of 130 to 162 months. Yet, because Echavarria faced a mandatory minimum sentence of 15 years on Count Three under 21 U.S.C. §§ 841(b)(1)(A) & 851, the PSI calculated his guidelines range to be 180 months' under U.S.S.G. § 5G1.2(b).

Echavarria did not object to the PSI, but the government did.  The government argued that a two-level enhancement under U.S.S.G. § 3B1.1(c) should have applied because Echavarria was an "organizer, leader, manager, or supervisor" of the criminal activity. It contended that Echavarria "identified a subordinate in the drug trafficking conspiracy" in his December 13 conversation with the undercover officer.  The probation officer disagreed, reasoning that Echavarria "did not exercise any decision-making authority; he did not recruit accomplices; and he did not claim a right to a larger share of the fruits of the crime."   The probation officer recommended a 180-month guidelines sentence.

At sentencing, the government objected to the factual accuracy of the PSI relating to the December 13 statements.  To support its objection, the government called Juan Alvarez, who testified as follows:

Alvarez worked in the narcotics division of the City of Tampa Police Department and was the undercover officer who purchased fentanyl from Echavarria.  Alvarez first met Echavarria in December 2022 and was able to purchase fentanyl from him several times.  He represented himself as an individual who was buying significant amounts of fentanyl to break it apart and distribute it in smaller amounts.  Alvarez explained that, because of the potency of fentanyl, a "drug trafficker wouldn't want to sell high pur[ity] of fentanyl for the possible result of an overdose."  Alvarez explained that Echavarria understood this principle.  When they met on December 13, Echavarria instructed Alvarez to cut the

fentanyl because "his fentanyl was so pure . . . he provided fentanyl to an individual, who then provided that same fentanyl to another individual who recently overdosed and died." Echavarria advised Alvarez that this incident showed why Alvarez should cut the fentanyl, and he explained that he had told the other individual to cut the fentanyl in the same way. Echavarria also conveyed that he was obtaining large amounts of fentanyl "at wholesale" and was permitted to "sell it at whatever price he acquires it from." Because of that dynamic, Echavarria chose the resale price, offering Alvarez a lower rate per gram if he purchased more. Alvarez stated that, based on his training and experience, this suggested that Echavarria was "in control of" the drug-trafficking operation, or, in other words, "managing his organization" and "calling the shots."

The government argued that Alvarez's testimony was relevant to Echavarria's offense conduct, directly related to the role enhancement, and should have been included in the PSI. Echavarria objected to the additional facts, arguing that the government's additions to the PSI were untimely and irrelevant because this case involved three distinct sales, not a conspiracy. That said, upon clarification, Echavarria conceded that the additions were timely. The court sustained the government's objection, reasoning that Alvarez's statements were "very relevant" and should be included in a revised PSI.

Based on these additional facts, the government also objected to the guidelines calculation in the PSI, arguing that a two-level role enhancement under U.S.S.G. § 3B1.1(c) should apply. It

argued that Echavarria provided an individual with drugs, directed that person to manage the drugs in a certain way, and set the prices "to control others or stand to profit." Echavarria contended that the § 3B1.1(c) enhancement was inapplicable because there was no evidence that he had supervised anyone, or that he was a manager, leader, or organizer in any type of criminal activity.

The court sustained the government's objection, finding that Echavarria "did identify [a] subordinate in the drug-trafficking conspiracy when he described the man that he sold drugs to who delivered it to the decedent" and that an indirect transaction sufficed for the enhancement to apply. The court added that it based the enhancement on Officer Alvarez's testimony and the government's proposed addition to the PSI based on that testimony.

The court calculated the guidelines offense level, applying the two-level enhancement, yielding a total offense level of 29. Echavarria reiterated his objection to the factual accuracy of Alvarez's testimony, the additions to the PSI, and the two-level role enhancement. Noting the objection, the court explained that, with a total offense level of 29 and a criminal history category of VI, Echavarria's guideline range was 180 to 188 months' imprisonment.

The government asked the court to vary upward and impose a sentence of 293 months. Echavarria argued for a shorter sentence than the government requested, proposing several alternatives to the district court. The district court ultimately imposed a 240-month term of imprisonment for each count, with all terms to run concurrently. After release, the district court ordered

Echavarria to serve 10 years of supervised release, consisting of an 8-year term as to Counts One and Two, and a 10-year term as to Count Three, all to run concurrently. Echavarria's appeal followed.

## II. STANDARD OF REVIEW

"We review the district court's interpretation and application of the Guidelines *de novo* and its underlying factual findings for clear error." *United States v. Jayyousi*, 657 F.3d 1085, 1114 (11th Cir. 2011); *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). We also review the district court's "application of law" to its underlying factual findings "*de novo*." *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010); *United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018).

## III. DISCUSSION

On appeal, Echavarria argues that the district court erred in applying the aggravating role enhancement under § 3B1.1(c). He contends that Alvarez's testimony that he supplied fentanyl to another individual—who he also advised to cut the substance—does not establish that he had any control or influence over that individual. He asserts that warning that individual to cut the drug because it was strong does not amount to exercising control over that individual. He also argues that Alvarez's testimony that he had a large supply of fentanyl and could resell the fentanyl without external supervision only establishes a buyer-seller relationship. He asserts

that price-setting does not show that he was "in control" of an organization or other participants.[1]

The government candidly concedes error. It explains that it bore the burden to prove the applicability of the enhancement and states the record does not support a finding that Echavarria exerted control, influence, or decision-making authority over the buyer. "The only evidence that Echavarria exercised control over the buyer," it states, "comes from [Echavarria's] telling the buyer to cut the fentanyl before selling it." The government contends that these facts simply showed a buyer-seller relationship which was insufficient for the enhancement, and it asks us to vacate and remand this case for resentencing.

A defendant can be eligible for a two-level enhancement under § 3B1.1(c) "if [he] was an organizer, leader, manager, or supervisor" of the charged criminal activity. U.S.S.G. § 3B1.1(c). The government must prove the existence of an aggravating role by a preponderance of the evidence. *United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir. 1998); *United States v. Gates*, 967 F.2d 497, 500-01 (11th Cir. 1992). "A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th

---

[1] Echavarria also argues that his sentence is substantively unreasonable. Because we resolve this appeal on the first issue and remand for resentencing, we need not decide this second issue.

Cir. 2021) (*en banc*) (quoting *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997)).

In distinguishing a leadership role, we have instructed district courts to assess "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *United States v. Phillips*, 287 F.3d 1053, 1058 (11th Cir. 2002) (quoting U.S.S.G. § 3B1.1, comment. (n.4)). "[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." *United States v. Jiminez*, 224 F.3d 1243, 1251 (11th Cir. 2000); *Phillips*, 287 F.3d at 1058.

Still, "[a] mere buyer-seller relationship is *not* a sufficient basis to assess a managerial enhancement." *United States v. Glinton*, 154 F.3d 1245, 1260 (11th Cir. 1998) (emphasis in original) (citing *United States v. Lozano-Hernandez*, 89 F.3d 785, 790 (11th Cir. 1996)). To that end, our cases have clarified that a defendant's "status as a middleman or distributor" is not enough to justify a managerial enhancement and that "arrangements between buyers and sellers, such as negotiating deliveries, are 'simply incidental to the buyer-seller relationship,'" and are also insufficient. *Alred*, 144 F.3d at 1422 (quoting *United States v. Witek*, 61 F.3d 819, 823 (1995)).

We are not bound by the concession of the government, *see United States v. Lee*, 586 F.3d 859, 866 (11th Cir. 2009), but we agree

with the parties here.  Taking the district court's factual findings and Alvarez's testimony as correct, we conclude the district court erred in imposing the enhancement.  The government bore the burden to show that the enhancement applied and, under our precedent, could not simply point to a "buyer-seller" relationship to justify the enhancement.  *Glinton*, 154 F.3d at 1260.  Yet that is all the evidence presented on this point shows.  There was no evidence that Echavarria exercised control, influence, or decision-making authority over another buyer, recruited a buyer, or received a larger share of the fruits of the crime.  *See* U.S.S.G. § 3B1.1, comment. (n.4).  Instead, the record shows that Echavarria engaged in drug sales with several individuals, set his own prices, and warned his buyers to cut the fentanyl with other substances.  This is insufficient under our caselaw and the text of the guideline.  U.S.S.G. § 3B1.1(c); *Glinton*, 154 F.3d at 1260; *Alred*, 144 F.3d at 1422.  Thus, the government did not carry its burden to show the enhancement applied, and this error entitles Echavarria to resentencing.[2]

---

[2] The government does not argue that this error was harmless, nor does the record support such a conclusion. *Cf. United States v. Maurya*, 25 F.4th 829, 837 (11th Cir. 2022) ("[T]he application of an incorrect Guidelines range is almost always enough 'to show a reasonable probability of a different outcome absent the error.'" (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018))); *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) ("[T]he Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar.  The Guidelines inform and instruct the district court's determination of an appropriate sentence.  In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence.").

## IV. CONCLUSION

For the reasons we have explained, we vacate Echavarria's sentence and remand for resentencing.

**VACATED AND REMANDED.**