[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-10991

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

HORACE MILTON BLACK,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:15-tp-20087-KMM-1

————————————————

Before Rosenbaum, Jill Pryor, and Newsom, Circuit Judges.

PER CURIAM:

Horace Milton Black appeals the revocation of his term of supervised release and the 36-month sentence the district court imposed upon revocation. He argues that there was insufficient evidence to support the district court's finding that he violated a condition of his supervised release and also that the district court imposed a substantively unreasonable sentence. After careful consideration, we affirm.

## I.

After Black pled guilty to committing an armed bank robbery, in violation of 18 U.S.C. § 2113(a), the district court imposed a sentence of 140 months' imprisonment followed by five years of supervised release. The conditions of Black's supervised release required that he "not commit another federal, state[,] or local crime" and "not unlawfully possess a controlled substance" while on supervised release. Doc. 1 at 10.[1] In addition, while on supervised release, Black was required to receive permission from his probation officer to leave the judicial district.

After Black completed his prison sentence, he began to serve his term of supervised release in the Southern District of Florida. During the first four years of his term of supervised release, Black

---

[1] "Doc." numbers refer to the district court's docket entries.

violated the terms of his supervised release at least three times by (1) traveling outside the judicial district where he was on supervised release without first securing the permission of his probation officer, (2) violating the law by driving with a suspended license, and (3) testing positive for marijuana. In proceedings related to each of these violations, the district court did not revoke Black's term of supervised release.

Shortly before Black's term of supervised release expired, he was arrested and the United States Probation Office filed a petition in the district court charging him with new violations of the conditions of his supervised release. The petition alleged that Black had violated the law by, among other things, possessing cocaine with intent to sell. Black was arrested and detained so that the district court could decide whether to revoke his supervised release.

The district court referred the case to a magistrate judge to determine whether Black had violated the terms of his supervised release. At a revocation hearing, the government introduced evidence showing that Black was arrested after being found with half a kilogram of cocaine.

The testimony at the evidentiary hearing reflected that during a narcotics investigation that involved multiple wiretaps, law enforcement officers intercepted a phone call in which two targets discussed their plan to sell half a kilogram of cocaine. On the call, Roosevelt Lewis and another individual, whom law enforcement designated as "Unidentified Male 9," planned the transaction in which Unidentified Male 9 would sell the cocaine. At the time law

enforcement officers intercepted the call, they did not know the identity of "Unidentified Male 9," but they knew the phone number he used, which had a 321 area code. Earlier in the investigation, officers observed a meeting between Lewis and Unidentified Male 9. From the surveillance, the officers were unable to ascertain Unidentified Male 9's identity, but they learned that he used the phone number with the 321 area code and drove a Jeep Liberty. During the surveillance, the officers identified the Jeep Liberty's license plate number.

On the evening of the transaction when Unidentified Male 9 planned to sell the cocaine, law enforcement officers surveilled a residence where they believed he was staying. When officers on the surveillance team saw the Jeep Liberty depart, they followed the vehicle. Other members of the surveillance team monitored location data captured from the cell phone with the 321 area code phone number that belonged to Unidentified Male 9. The location data reflected that the movements of the cell phone were consistent with the movements of the Jeep Liberty.

Officers on the surveillance team directed two Florida State Troopers, Ricky Zigler and Eddie Rivera, to watch for the Jeep Liberty and provided them with the vehicle's description and license plate number. Zigler spotted the Jeep Liberty traveling on the interstate and followed it. After observing the vehicle commit traffic infractions, he initiated a traffic stop.

As Zigler signaled for the Jeep to pull over, an officer on the surveillance team intercepted a phone call from Unidentified Male

9, using the phone number with the 321 area code, to Lewis. On the call, Unidentified Male 9, stated, "Bro[,] they got me pulled[,] bro." Doc. 57-2 at 8.

At the traffic stop, Zigler approached the Jeep Liberty and asked the driver, who was the sole occupant of the vehicle, for his license and registration. Black was the driver of the vehicle. When Zigler approached the vehicle, he smelled marijuana and saw crumbs of what he believed was marijuana residue in the center console of the car. Zigler told Black that he could smell marijuana and directed him to exit the vehicle.

While Zigler spoke to Black, Rivera arrived on the scene with a dog trained to detect narcotics. The dog alerted to the front passenger side of the Jeep Liberty.

Zigler and Rivera searched the vehicle. Underneath the passenger seat closest to the center console, Zigler found a plastic shopping bag. According to Zigler, the bag was within reach of the driver's seat. Inside the bag were two smaller bags that contained a white powdery substance that appeared to be cocaine. Field tests confirmed that the substances in both bags were cocaine. Together, the two bags had a combined weight of 537 grams. According to Rivera, based on his training and experience, this quantity was inconsistent with personal use and instead indicative of distribution.

The officers found one cell phone on Black the night of his arrest. During the hearing, Zigler and Rivera both testified that

they did not know the telephone number or area code for the cell phone that they had seized.

After the hearing, the magistrate judge issued a recommendation that the district court find that Black violated the conditions of his supervised release, revoke his supervised release, and hold a sentencing hearing. The magistrate judge concluded that the government had shown by a preponderance of the evidence that Black had violated the law by "possess[ing] the cocaine that was in the vehicle he was driving at the time of the traffic stop with the intent to sell it." Doc. 59 at 9. The magistrate judge explained that the cocaine was in Black's possession because the bags were found "under the front passenger seat" and "within the reach of the driver" and that Black was the only person in the vehicle at the time of the stop. *Id.* at 10. The magistrate judge also found that the intercepted phone calls between Lewis and Black provided further evidence that Black was aware of the cocaine in the car and thus knowingly possessed it. In addition, the magistrate judge found by a preponderance of the evidence that Black intended to sell the cocaine. The magistrate judge explained that the discussion on the recorded phone calls along with the amount of cocaine seized supported finding that Black intended to sell the cocaine.

Black had argued that there was insufficient evidence that he knowingly possessed the cocaine with intent to sell because the government had not shown that he was Unidentified Male 9 and thus could not rely on the recorded phone calls. He pointed out that there was no evidence that the cell phone with the 321 area

code phone number had been recovered during the search of the car. Still, the magistrate judge concluded that the government established by a preponderance of the evidence that Black was Unidentified Male 9. The magistrate judge found "[i]t would be highly unlikely that [Unidentified Male 9] was somewhere else being stopped at the same time and that the GPS system that identified the movement of [Unidentified Male 9] consistent with the movement of [Black's] vehicle would have also been incorrect." *Id.* at 11.

The magistrate judge continued on explaining that the court did not need to rely on the recorded phone call evidence. "[E]ven if one were to assume that [Unidentified Male 9] was being stopped at the same time somewhere else, that the GPS information was incorrect, and that [Black] was not the person on the earlier calls with Lewis," the magistrate judge concluded, there was still sufficient evidence that Black possessed cocaine. *Id.* at 11–12. The magistrate judge emphasized that Black was "stopped in a car with half a kilogram of cocaine" that was within his reach and found that it was "unlikely that cocaine in that amount and of that value would be in the car that [Black] was driving without his knowledge." *Id.* at 12. The magistrate judge further concluded that the court could find Black intended to sell the cocaine based solely on the quantity of cocaine found in the vehicle.

Black objected to the recommendation. After considering Black's objection, the district court adopted the magistrate judge's recommendation and found that Black had violated the conditions

of his supervised release. The court revoked Black's supervised re-
lease.

The district court then considered an appropriate sentence
for the violation. The court calculated Black's guidelines range as
33 to 36 months' imprisonment. Black requested that the court
grant a downward variance and impose a sentence below this
range. He pointed to the ongoing COVID-19 pandemic and that he
faced a 15-year mandatory minimum sentence in a state prosecu-
tion arising out of the same incident. He also urged the court to
consider other mitigating factors including that he had kept a job
while on supervised release, paid his child support, and was raising
his family.

The government requested a sentence of 36 months. It ar-
gued that Black had committed a "very serious felony offense . . .
while he was still under supervision for an even more serious of-
fense of armed robbery." Doc. 77 at 11. The government also
pointed out that while on supervised release Black had previously
violated the conditions of his supervised release three times with-
out receiving any additional jail time.

The district court rejected Black's request for a downward
variance and sentenced Black to 36 months' imprisonment with
two years of supervised release to follow. The court directed that
the sentence would run consecutive to any sentence imposed in
state proceedings. The court explained that when Black committed
the earlier violations of the conditions of his supervised release, it
had given him "a break" by not imposing a custodial sentence. *Id.*

at 15. Because Black "didn't get the message" that he needed to comply with the terms of his supervised release, the court determined that a longer sentence was necessary to "promote respect for law." *Id.* at 15–16. The district court also explained that a 36-month sentence was reasonable given the "underlying offense here," Black's "background and criminal history," and "the need to promote deterrence." *Id.* at 16.

This is Black's appeal.

## II.

"We review the district court's conclusion that [a defendant] violated the terms of his supervised release for abuse of discretion." *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). We review a sentence imposed upon revocation of supervised release for reasonableness under the deferential abuse-of-discretion standard. *United States v. Moore*, 22 F.4th 1258, 1269 (11th Cir. 2022).

## III.

On appeal, Black argues that the district court abused its discretion when it (1) found that he violated the conditions of his supervised release and (2) imposed a 36-month sentence for his violation. We address each issue in turn.

### A.

We begin with Black's argument that the district court abused its discretion in finding that he violated the conditions of supervised release. He says that there was insufficient evidence to show that he had committed the crime of possessing with intent to sell cocaine.

There is no dispute in this case that one condition of Black's supervised release was that he not commit a violation of the law. Here, it was alleged that while on supervised release Black violated the Florida law prohibiting possession of cocaine with intent to sell. *See* Fla. Stat. § 893.13(1)(a). The elements of this offense are that (1) the defendant possessed with intent to sell a certain substance; (2) the substance was cocaine; and (3) the defendant had knowledge of the presence of the substance. *See Driver v. State*, 288 So. 3d 716, 719 (Fla. Dist. Ct. App. 2020).

To revoke Black's supervised release, the district court had to find by a preponderance of the evidence that Black committed this offense. *See* 18 U.S.C. § 3583(e)(3). "A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (en banc) (internal quotation marks omitted). This standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Id.* (internal quotation marks omitted). To satisfy the standard in this case, the government had to persuade the trier of fact that it was more likely than not that Black committed the offense of possession of cocaine with intent to sell.

21-10991                Opinion of the Court                11

Here, Black argues that the evidence was insufficient in two ways. He says that there was "no proof" that (1) he had knowledge of the presence of the cocaine in the car or (2) he intended to sell the cocaine. Appellant's Br. at 15. We disagree.

First, there was sufficient evidence to support a finding that Black knew the cocaine was in the Jeep Liberty. The record reflects that Black was the sole occupant of the vehicle while a valuable and substantial quantity of cocaine was inside it. And Zigler's testimony established that the plastic bag containing the cocaine was under the passenger seat in a place that was within Black's arms reach when he was sitting in the driver seat. This evidence was sufficient to support an inference that Black knew the cocaine was in the vehicle. *See United States v. Howard*, 742 F.3d 1334, 1341–42 (11th Cir. 2014) (concluding there was sufficient evidence that defendant knowingly possessed contraband found in glovebox of car when he had been "in the driver's seat just before the search"); *State v. Odom*, 862 So. 2d 56, 58–59 (Fla. Dist. Ct. App. 2003) (concluding there was sufficient evidence that defendant knowingly possessed cocaine when defendant was the "sole occupant and driver of the vehicle" and contraband was found close to driver's seat).

Second, there was sufficient evidence that Black intended to sell the cocaine because of the quantity of cocaine found in the car. Rivera testified that based on his training and experience, the quantity of cocaine found—over half a kilogram—was inconsistent with personal use and instead indicative of distribution. *See United States v. Thomas*, 676 F.2d 531, 535 (11th Cir. 1982) (recognizing

that a factfinder may infer that a defendant intended to sell or distribute drugs based on the quantity of drugs found).[2]

For these reasons, we conclude that the district court did not abuse its discretion in concluding that Black violated the conditions of his supervised release and revoking his supervised release.[3]

## B.

Black also challenges the 36-month sentence that the district court imposed as substantively unreasonable. He says that the district court gave too much weight to his criminal history and did not

---

[2] In addition to the evidence about the quantity of cocaine found, the phone calls between Lewis and Unidentified Male 9 showed that Black intended to sell the drugs. Although Black argues there was insufficient evidence to show that he was Unidentified Male 9, the record included testimony that location data from the cell phone with the 321 area code showed that it was moving consistently with the Jeep Liberty, a vehicle for which Black was the sole occupant. But, as we explained above, even without the recorded phone calls, there was sufficient evidence to show that it was more likely than not that Black committed the offense.

[3] Black also suggests in passing that the magistrate judge and district court should have suppressed evidence found during the search of the Jeep Liberty because Black's constitutional rights were violated when Zigler stopped and searched the vehicle. Even assuming that Black adequately raised this argument on appeal, we cannot say that the district court erred in considering the evidence found during the search of the Jeep Liberty because we have held that the exclusionary rule does not apply to supervised release revocation proceedings. *See United States v. Hill*, 946 F.3d 1239, 1242 (11th Cir. 2020).

sufficiently consider other relevant factors, such as his "individual history and the nature of the charges." Appellant's Br. at 15.

Before imposing a sentence of imprisonment upon revocation, the district court must consider certain sentencing factors outlined in 18 U.S.C. § 3553(a).[4] *See* 18 U.S.C. § 3583(e). The weight given to each § 3553(a) factor "is committed to the sound discretion of the district court." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).

We will vacate a district court's sentence imposed upon revocation of supervised release only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Moore*, 22 F.4th at 1269 (internal quotation marks omitted). We ordinarily expect a sentence falling within the

---

[4] Section 3553(a) states that a court should "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training or medical care. 18 U.S.C. § 3553(a)(2). In imposing a sentence, a court also should consider: the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range established under the guidelines, any pertinent policy statement issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

guidelines range to be reasonable. *See United States v. Croteau*, 819 F.3d 1293, 1309–10 (11th Cir. 2016). "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 552 U.S. 38, 51 (2007).

After considering the facts of the case, we are not left with a definite and firm conviction that the district court committed an error of judgment when it imposed a 36-month sentence. This sentence was within the guidelines range, which is an indicator of reasonableness. *See Croteau*, 819 F.3d at 1309–10. Given that Black's violation involved arranging to sell a significant quantity of cocaine while on supervised release and that he had previously violated several other conditions of supervised release, we cannot say that the sentence was unreasonable.

**AFFIRMED.**