[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-11376

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TERRANCE WELLONS,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:98-cr-08148-CMA-1

————————————————

Before Rosenbaum, Abudu, and Anderson, Circuit Judges.

PER CURIAM:

Terrance Wellons appeals the revocation of his supervised release.  *See* 18 U.S.C. § 3583(g).  The district court found that Wellons violated the conditions of his release by committing grand theft, in violation of Fla. Stat. § 812.014(1)(2)(c).  Wellons maintains that the evidence shows he was merely an innocent bystander to a theft committed by another person.  We affirm because the court's view of the evidence is reasonable and supported by the record.

## I.

Wellons began serving his five-year term of supervised release in 2019, after President Barack Obama commuted the remainder of Wellons's 420-month prison sentence for drug-trafficking and gun crimes.  In April 2023, the probation office petitioned to revoke his supervised release after he was arrested and charged with grand theft, in violation of Fla. Stat. § 812.014(a)(2)(c).[1]

At the revocation hearing, the government presented witnesses and video evidence about the theft from a Home Depot on February 23, 2023.  Wayne Effort, a Home Depot loss prevention officer, testified that he observed Wellons enter the Home Depot with Willie Faulk, who had attempted to steal items from the store before.  Near the tool corral, Faulk placed a table saw in the cart,

---

[1] Wellons was also charged with felony retail theft, but the government dismissed that ground for revocation at the revocation hearing.

while Wellons added some car-cleaning supplies. Faulk then pushed the cart to the garden center, and Wellons walked "behind him making sure [no one] was watching." At the garden center, Faulk added two trimmers to the cart while Wellons "stayed on the edge of the aisle looking left and right to see if anyone was coming." Once the cart was full, Faulk and Wellons spoke, and then Faulk started walking with the cart towards the entrance door. Wellons followed a few paces behind Faulk and kept "looking left to right going out." Faulk was arrested just after leaving the store. Meanwhile, Wellons hesitated when he heard a fire alarm and police sirens going off, and he was apprehended soon after. The total amount of merchandise stolen was $824.72. The government played portions of Home Depot surveillance footage during Effort's testimony.

In Effort's training and experience, retail thefts usually involved "one person pushing the cart" and another person acting as a lookout, plus a getaway driver waiting outside. Effort further testified that Wellons's actions were consistent with acting as a lookout during the theft.

The government also called as a witness Kendra Strong, a police officer for the Boynton Beach Police Department, and introduced footage from her body-worn camera. Strong received updates about the two suspects from Effort, and she was involved in both arrests. Wellons denied any involvement in or awareness of the theft. He had some money in his pockets, enough to buy the

cleaning supplies he had added to the cart. And he was not carrying any items from the store.

Wellons argued that the evidence failed to show his participation in the theft beyond his mere presence with Faulk, the person who stole the items. The government responded that the evidence reflected that Wellons operated as a lookout while Faulk placed items in the cart.

The district court found that the government proved by a preponderance of the evidence that Wellons violated the conditions of his supervised release by committing the offense of grand theft with Faulk. In the court's view, it was "abundantly clear" from the surveillance footage and Effort's testimony that Wellons and Faulk were working together and that Wellons was not simply present at the wrong place at the wrong time. After revoking Wellons's supervised release, the district court sentenced him to eight months of imprisonment followed by an additional two years of supervised release. This appeal followed.

## II.

We review a district court's revocation of supervised release for an abuse of discretion, *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014), and its findings of fact for clear error, *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). "[W]hen a fact pattern gives rise to two reasonable and different constructions, the fact finder's choice between them cannot be clearly erroneous." *United States v. Rodriguez*, 34 F.4th 961, 970 (11th Cir. 2022).

A district court "may revoke a defendant's term of supervised release and impose a prison sentence when it finds by a preponderance of the evidence that the defendant violated a condition of his or her supervised release." *United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996); 18 U.S.C. § 3583(e)(3). "A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (quotation marks omitted). This standard requires the government to show only "that the existence of a fact is more probable than its nonexistence." *Id.* (quotation marks omitted).

In Florida, a person commits theft if he knowingly obtains someone else's property with intent to either deprive the other person of a right to the property or appropriate the property to his own use. Fla. Stat. § 812.014(1). A person commits grand theft in the third degree if the stolen property is, among other things, valued at more than $750 but less than $20,000. *Id.* § 812.014(2)(c).

A person is punishable as a principal for aiding and abetting a crime if he "intended that the crime[] be committed" and did "some act to assist another in committing the crime[]." *Garcia v. State*, 899 So. 2d 447, 449 (Fla. Dist. Ct. App. 2005). Mere presence at the scene of the crime is insufficient to establish participation in the offense. *Id.* at 450. Instead, "one must have a conscious intent that the crime be done and must do some act . . . which was intended to and does incite, cause, encourage, assist, or advise

another person to actually commit the crime." *K.B. v. State*, 170 So. 3d 121, 123 (Fla. Dist. Ct. App. 2015) (quotation marks omitted).

Here, the district court did not abuse its discretion by revoking Wellons's supervised release. The court determined by a preponderance of the evidence that Wellons aided and abetted the commission of grand theft. Having reviewed the surveillance footage and the revocation hearing transcript, we cannot say that the court clearly erred in finding that Wellons was not simply present at the scene of the theft. Rather, his actions were consistent with an inference that he participated in the crime and acted as a lookout for Faulk to help avoid detection. He entered the store with Faulk and walked around with or near him, added items to the cart Paulk was pushing, and was observed looking around as if to help Faulk to avoid detection, including when Faulk was leaving the store without paying.

While the evidence did not rule out the possibility Wellons was unaware of any theft plans, that possibility cannot support reversal on this record. "[W]hen a fact pattern gives rise to two reasonable and different constructions, the fact finder's choice between them cannot be clearly erroneous." *Rodriguez*, 34 F.4th at 970. Because the district court's construction of the evidence was reasonable, the district court did not clearly err in finding that Wellons violated the conditions of his supervised release by committing a new crime. Accordingly, we affirm the revocation of Wellons's supervised release.

**AFFIRMED.**