COURT OF APPEALS
DECISION
DATED AND FILED

April 8, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1266-CR**

Cir. Ct. No. 2019CF573

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CHRISTOPHER J. ALEXANDER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: YADIRA REIN, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Christopher J. Alexander appeals from an amended judgment of conviction, entered after revocation of probation, on one count of

felony bail jumping. Alexander also appeals from an order denying his motion for postconviction relief. Alexander argues that his defense counsel provided constitutionally ineffective assistance at his sentencing after revocation of probation hearing, and he therefore seeks resentencing. Based on the circumstances of this case, although we assume, without deciding, that Alexander's defense counsel performed deficiently, we conclude that Alexander was not prejudiced by that deficient performance. Accordingly, we affirm.

## BACKGROUND

¶2 In June 2020, Alexander was convicted, pursuant to his no-contest plea, of one count of felony bail jumping for violating the terms of a signature bond issued upon his release from custody on a charge, in Winnebago County case No. 2019CF361, of causing a child between the ages of thirteen and eighteen to view sexual activity. The circuit court withheld sentence and imposed three years' probation. Alexander's probation was revoked in 2021.[1]

¶3 The DOC's revocation summary listed seven claimed violations of Alexander's rules of supervision. These allegations included the following: (1) Alexander possessed a device capable of accessing the internet; (2) Alexander did not report internet identifier(s) to the Wisconsin Sex Offender Registry; (3) Alexander pursued a romantic relationship without agent approval;

---

[1] Alexander was arrested on June 23, 2021, and he was held in custody by the Wisconsin Department of Corrections (DOC) for several months while he was awaiting his revocation hearing. Alexander was told he was not eligible for an attorney through the Office of the State Public Defender. Eventually, Alexander decided to waive his revocation hearing "because [he was] waiting so long to try to get an attorney," and he thereafter sought a court-appointed attorney. Defense counsel was then appointed to represent Alexander at his sentencing after revocation hearing.

(4) Alexander attempted to arrange sexual acts to be performed on him in exchange for money; (5) Alexander attempted to have Julia[2] and two other women, all of whom were "indebted to him," recruit females to perform sexual acts or massages; (6) Alexander attempted to provide shelter, money, and/or food in exchange for sexual acts; and (7) Alexander did not provide true and accurate information as directed. The revocation summary outlined the evidence in support of these allegations, which included Alexander's text messages to Julia and the other women.

¶4      At Alexander's sentencing after revocation, defense counsel's argument focused on the underlying bail jumping offense, and he downplayed for the circuit court Alexander's culpability and behaviors in regard to that charge, as well as the other bail jumping charges that were dismissed and read in as part of Alexander's plea. Within his main argument, it does not appear that defense counsel addressed the allegations in Alexander's revocation summary at all. Instead, defense counsel presented a short argument highlighting Alexander's education, the fact that Alexander is a disabled veteran, and Alexander's many health concerns. Counsel also noted that Alexander has "expressed genuine and sincere remorse" for his actions that led to the bail jumping charges. Finally, defense counsel focused on the DOC's recommendation for a six-to-nine-month jail sentence, and he asked the court for a one-year sentence with Huber work privileges so that Alexander could get a job and hopefully keep his home.

---

[2] This individual was designated by her initials in the revocation summary. For ease of reading, we will refer to her using a pseudonym, rather than her initials.

¶5     In response to defense counsel's sentencing arguments, the circuit court asked the following question: "Do you have anything that could help the [c]ourt try to understand your position, your recommendation, based on the content of all of those [rules of supervision] violations?"  Defense counsel then responded by reiterating that the DOC agent who "decided to revoke" Alexander "was the one who recommended" the six-to-nine-month jail sentence, which served as the basis for defense counsel's recommendation.  Unsatisfied with that explanation, the court observed that the supervision violations "are serious violations," and while it understood "that we are not here to sentence on that," the court did not "know how [the DOC] came up with [its] recommendation" and was seeking to "understand [counsel's] point of view."  Defense counsel began to discuss the bail jumping charges again, and the court asked him to "focus on" the allegations related to the sexual acts in the revocation summary.  Defense counsel then stated that he "did not have an explanation from [Alexander] as to, I guess, the instances on when this occurred specifically" but that the individuals referenced in the revocation summary were not juveniles.  Overall, counsel was unable to present a cogent argument regarding the supervision violations.

¶6     Alexander was also provided his right of allocution.  He explained to the circuit court his perspective that Julia[3] and the others mentioned in the revocation summary "are known to be drug addicts," "[t]hey are thieves," and "[t]hey lie."  In particular, he stated that Julia "was upset that I wouldn't let her

---

[3] Although Alexander did not provide Julia's name at the sentencing hearing, we presume he was referring to Julia based on his statements on appeal that Julia "stole [his] vehicle twice (that was reported) and she was convicted of the first incident and revoked for the second incident" and that Julia "stole [his] credit cards and accrued nine fraudulent transactions with [one of] his card[s], for which Alexander was granted restitution."

come back into my house"; "she stole a bunch of stuff from me," including credit cards; and she "stole my car three times. There's also police reports on all of this." According to Alexander, Julia "was upset when I finally told her I was done," and she started telling "accusations and lies" that he "was running a whorehouse."

¶7 The State's sentencing argument focused heavily on the allegations in the revocation summary, noting that Alexander was "not here to be sentenced for that conduct but it matters in terms of the ability to rehabilitate him, his character, the need to protect the community." *See State v. Brown*, 2006 WI 131, ¶¶34-37, 298 Wis. 2d 37, 725 N.W.2d 262. According to the State, Alexander "escalated to trafficking, sexual predation, and trying to force women into sexual servitude"; therefore, "[h]e is a danger to the community." The State recommended the maximum sentence of six years. Ultimately, the circuit court sentenced Alexander to two years' initial confinement followed by two years' extended supervision.

¶8 Alexander filed a postconviction motion, seeking sentence modification or, in the alternative, a new sentencing hearing. As the bases for his sentence modification claim, Alexander alleged that the circuit court was "unaware that the [DOC] would deem him ineligible for programming" and was unaware of "a crucial set of facts" regarding Julia. As the basis for a new sentencing hearing, Alexander alleged that his defense counsel was constitutionally ineffective.

¶9     The circuit court held an evidentiary *Machner*[4] hearing on the motion, during which both defense counsel and Alexander testified. Alexander testified that he "never had any contact from [defense counsel] himself, but five days before [his] hearing[,] one of [counsel's] interns or one of his associates reached out and she called me and we talked for about seven to ten minutes."

¶10     Defense counsel testified about his work on the case. He first stated, "I believe I did draft this sentencing argument after reviewing the revocation packet and had a paralegal who doesn't work for me anymore either set up the call or talk to Mr. Alexander." After reviewing his records, which were entered as an exhibit at the hearing, defense counsel stated that the record reflected that one of his paralegals "called [Alexander] in the jail and went over the sentencing argument with him." The exhibit also suggests that the same paralegal both conducted the "intake" with Alexander and "drafted the sentencing argument." Defense counsel had no "specific recollection in this case of whether [he] personally spoke with Mr. Alexander or whether [he] had [his] paralegal speak with him." When asked whether he investigated Julia or the allegations in the revocation summary, counsel stated that he did not investigate either because he "did not represent [Alexander] in the actual revocation matter" and "because the fact finding portion was over." Further, defense counsel observed that his sentencing argument was discussed with Alexander prior to the hearing, but Alexander never mentioned that Julia or the other women should be investigated.

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶11　The circuit court issued a written decision denying Alexander's motion. On Alexander's ineffective assistance of counsel claim,[5] the court concluded that defense counsel performed deficiently by not meeting with Alexander, by entrusting his staff to conduct presentencing meetings with Alexander, and by failing to impeach Julia's credibility. Ultimately, however, the court determined that Alexander had not shown that he was prejudiced by defense counsel's deficiencies. The court reasoned that while defense counsel's "deficiencies were great," they were not prejudicial because "the [c]ourt relied upon much more than [Julia's] statements when imposing sentence. The record reflects that [Julia's] statements were minimal and simply confirmed events described in [Alexander's] text messages. The most damning evidence against Alexander were his own words in the text messages he sent." The court further explained that "given how little [Julia's] credibility shaped the accusations of trafficking women," Alexander could not show that "the alleged defect in counsel's performance actually had an adverse effect on the defense." (Citation omitted.) Alexander appeals.[6]

---

[5] The circuit court denied Alexander's requests for both sentence modification and resentencing. Alexander does not challenge the grounds for the court's decision as to sentence modification on appeal; therefore, we will not address it further.

[6] We pause here to note Alexander's failure to comply with the Rules of Appellate Procedure. Throughout his brief-in-chief and his reply brief, Alexander fails to include appropriate references to the record, instead citing his appendix. *See* WIS. STAT. RULE 809.19(1)(d)-(e) (2023-24). The appendix is not the record. ***United Rentals, Inc. v. City of Madison***, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. We caution counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

**DISCUSSION**

¶12    On appeal, Alexander renews his ineffective assistance claim. Alexander contends that defense counsel performed deficiently by failing "to personally meet with or otherwise discuss [his] case with him in preparation for the sentencing hearing following revocation of his community supervision." According to Alexander, "[a]n attorney who never speaks with his client, never reviews the materials offered against him by the State, [and] who does not even prepare his own arguments is not functioning as legal counsel. Under those facts, counsel is merely a shell." Further, he argues that counsel's deficient performance prejudiced him because it "resulted in a complete breakdown of the adversarial process and the result is neither fair, nor just."

¶13    "A criminal defendant has the constitutional right to effective assistance of counsel." *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. "To establish the assistance a defendant received was ineffective, he [or she] must prove two elements: (1) his [or her] counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Id.*; *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Steven Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶14    Whether counsel was ineffective presents a mixed question of fact and law. *State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334. We will not disturb a circuit court's findings of fact unless they are clearly erroneous. *Id.* However, whether counsel's conduct violated the constitutional

standard for effective assistance is ultimately a question of law that we decide de novo. *Id.*

¶15    In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.    Given the circuit court's conclusion that "Alexander has demonstrated deficiencies in [defense counsel's] representation" and the State's recommendation that we, too, decide this case "on the prejudice prong of *Strickland*," we will assume, without deciding, that Alexander's defense counsel performed deficiently.    *See id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").    Nevertheless, we conclude, for the reasons that follow, that Alexander has failed to establish that defense counsel's deficient performance prejudiced Alexander's defense.

¶16    "To prove prejudice, a defendant must establish that '*particular* errors of counsel were unreasonable' and 'that they *actually* had an adverse effect on the defense.'"    *Sholar*, 381 Wis. 2d 560, ¶33 (citation omitted).    We therefore determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    A reasonable probability is a probability sufficient to undermine confidence in the outcome."    *Strickland*, 466 U.S. at 694; *see also **State v. Benson***, 2012 WI App 101, ¶19, 344 Wis. 2d 126, 822 N.W.2d 484 (noting that in the sentencing context, the defendant "must show" that "there is a reasonable probability the result of the sentencing hearing would have been different").    Prejudice is not presumed "simply because certain decisions or actions of counsel were made in error," *Balliette*, 336 Wis. 2d 358, ¶24, and "[i]t is not enough for the defendant to show

that the errors had some conceivable effect on the outcome of the proceeding," **Strickland**, 466 U.S. at 693. While "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases," **Sholar**, 381 Wis. 2d 560, ¶44 (citing **Strickland**, 466 U.S. at 693), speculation regarding what the result might have been is insufficient, **State v. Erickson**, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999). Instead, the error must have caused some adverse effect. **Benson**, 344 Wis. 2d 126, ¶19.

¶17 Here, Alexander's basic assertion is that defense counsel was deficient by failing to examine the nature of the allegations in the revocation summary and was unaware of Alexander's position on those violations; therefore, defense counsel was unable to properly address the circuit court's questions about the violations. According to Alexander, had defense counsel investigated the nature of the allegations, "he could have presented evidence and argument against at least some of the allegations in the revocation summary." Further, Alexander argues that defense counsel's failure to investigate Julia prevented him from being able to discredit her statements. These failures, Alexander contends, undermined the functioning of the sentencing hearing to such a degree that a new sentencing hearing is warranted.

¶18 We conclude that the circumstances in this case do not support Alexander's above conclusion, and we agree with the circuit court that Alexander has failed to prove prejudice. Initially, we note that although defense counsel was unaware of and unable to present Alexander's position on the supervision violations, Alexander specifically discussed during his allocution at least some of the information that he now claims defense counsel should have discussed. As noted above, Alexander told the court that Julia stole his car and his credit cards, and he provided reasons that she would lie about his actions. *See supra* ¶6.

Alexander further informed the court that there were police reports related to Julia's thefts in support of his statements. Therefore, the court had this information when it rendered its sentence.

¶19 Moreover, defense counsel's deficient performance did not prejudice Alexander because the circuit court's sentencing decision was minimally based on Julia's allegations. Even if defense counsel had challenged Julia's credibility or succeeded in convincing the court to disregard Julia's allegations, Alexander's own text messages, which were disclosed in the revocation summary, provided support for the accusations. Importantly, the court specifically found that, regardless of defense counsel's failure to argue against Alexander's supervision violations or Julia's allegations, Alexander's own text messages were sufficient to demonstrate that he was engaging in serious violations of his rules of supervision, and he, therefore, could not remain in the community. The court went on to explain that "given how little [Julia's] credibility shaped the accusations of trafficking women," Alexander could not show that "the alleged defect in counsel's performance actually had an adverse effect on the defense." Accordingly, the court stated that it would not have changed its decision absent counsel's alleged errors. Under these circumstances, we cannot conclude that Alexander suffered any prejudice as a result of defense counsel's deficient performance.

¶20 On appeal, however, Alexander contends that defense counsel's deficient performance "fell so far below the base minimum performance standards that this [c]ourt should presume prejudice." *See* ***Erickson***, 227 Wis. 2d at 771. Alexander is correct that in "rare" instances courts in this state will presume that counsel's deficient performance is prejudicial. *See* ***id.*** at 770. Our supreme court has identified three categories where this presumption will apply. ***State v. Pinno***,

11

2014 WI 74, ¶83, 356 Wis. 2d 106, 850 N.W.2d 207. Here, it appears that Alexander is arguing that defense counsel's performance at sentencing fell within the third category of cases: "[W]hen the attorney engages in egregious conduct far outside the bounds of effective assistance such as providing representation under a conflict of interest or failing to present known evidence that calls into question the defendant's competency to stand trial." *See id.*

¶21 Alexander asserts that defense counsel's "representation fell so far below the minimum performance standard" "that he was not functioning at all as counsel in this case and his representation constituted a complete denial of counsel." *See Strickland*, 466 U.S. at 692; *United States v. Cronic*, 466 U.S. 648, 659 (1984); *see also State v. Tony Smith*, 207 Wis. 2d 258, 280, 558 N.W.2d 379 (1997) (stating that, in limited situations, it may be appropriate to presume prejudice as a result of counsel's error due to the difficulty in measuring the harm caused by certain types of errors). In *Cronic*, the United States Supreme Court examined the importance of the effective assistance of counsel to a fair criminal trial. *Cronic*, 466 U.S. at 656. The Court explained,

> [t]he right to the effective assistance of counsel is … the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Id.* at 656-57 (footnotes omitted). Based on the *Cronic* Court's reasoning, Alexander argues that defense counsel's "lack of proper effort to prepare for sentencing denied [him] his right to subject the State's sentencing recommendation to adversarial testing."

¶22    First, we note that the State asserts that Alexander did not raise a *Cronic* claim in his postconviction motion, and therefore he has forfeited this argument on appeal. *See Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476 ("A fundamental appellate precept is that we 'will not ... blindside [circuit] courts with reversals based on theories which did not originate in their forum.'" (citation omitted)); *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 ("Arguments raised for the first time on appeal are generally deemed forfeited ...."). In his reply brief, Alexander responds that he "was unaware of the degree to which his counsel performed deficiently until counsel testified at the post[]conviction hearing," he "has consistently argued the same facts of this case as are alleged in these briefs," and the facts in *Schonscheck*—a lemon law case—"are not comparable to a defendant's ineffective assistance of counsel claim."

¶23    We are not persuaded by Alexander's arguments, and we conclude that he has forfeited his *Cronic* claim on appeal. It is clear that Alexander did not cite *Cronic* or even argue that he suffered a complete denial of counsel in his postconviction motion. Although Alexander claims that he was essentially unaware of the possibility of this argument until the postconviction *Machner* hearing, based on our review of the record, it is also clear that neither *Cronic* nor the presumption of prejudice was discussed *during* the *Machner* hearing. Furthermore, the circuit court requested supplemental information from the parties on another issue, and the court specifically stated, "I plan to do a written decision, so if there any supplemental briefs, anything the parties would want me to consider, I just ask that you submit those within 45 days." Alexander filed a supplemental brief. Nevertheless, he failed to address the *Cronic* issue in that brief.

¶24 Moreover, simply arguing ineffective assistance of counsel before the circuit court was insufficient. Alexander was required to sufficiently develop the *Cronic* issue in the circuit court in a way that allowed the court and the opposing party to address the issue. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177. He failed to do so. Finally, the State cited *Schonscheck* for "[a] fundamental appellate precept," *Schonscheck*, 261 Wis. 2d 769, ¶11, which is not based on the specific facts of that case and is undeniably applicable here.

¶25 Even if we were to conclude that Alexander had not forfeited his *Cronic* claim, however, we would not presume prejudice in this case. "*Cronic* and later decisions emphasize that the denial [of counsel] must be 'complete' to warrant the presumption of prejudice." *Schmidt v. Foster*, 911 F.3d 469, 479 (7th Cir. 2018). Defense counsel did not entirely abandon his duty to meaningfully advocate for Alexander at sentencing. Defense counsel had knowledge of the case from his prior representation of Alexander; counsel had his staff review the revocation packet with Alexander and obtain his position on the issues; counsel attended the hearing and made an argument based on the DOC's more favorable sentencing recommendation in the revocation summary; and although the supervision violations were relevant to Alexander's sentencing, *see Brown*, 298 Wis. 2d 37, ¶¶34-37, counsel's argument correctly focused on the underlying charge for which he was being sentenced. While defense counsel's performance was deficient, counsel's errors were akin to a mistake or a failure to investigate, *see Balliette*, 336 Wis. 2d 358, ¶24, not a complete denial of counsel.

¶26 Finally, Alexander challenges the circuit court's and the State's application of the prejudice standard, asserting that "[i]t is not [his] burden to demonstrate that he would receive a lesser sentence if he were granted a new

sentencing hearing." For support, Alexander cites *Steven Smith*, 268 Wis. 2d 138, ¶17, and *Tony Smith*, 207 Wis. 2d at 275-76, for the proposition that appellate courts have rejected a standard requiring that the defendant show that the outcome would be different. According to Alexander, in *Tony Smith*, our supreme court stated "that the prejudice standard for an ineffective assistance of counsel claim, in the context of a sentencing, focuses on the fairness of the adversarial process." *See Tony Smith*, 207 Wis. 2d at 275-76. Thus, he contends that "the [circuit] court's finding that Alexander had to show that counsel's deficient performance actually impacted the sentencing is not the law" because "[t]he *Strickland* test for prejudice is not an outcome-determinative test." *See Tony Smith*, 207 Wis. 2d at 276; *see also Strickland*, 466 U.S. at 693-94.

¶27 We disagree with Alexander's characterization of the *Strickland* prejudice test. First, in terms of Alexander's allegation that the circuit court and the State are applying an outcome-determinative test in violation of *Strickland*'s teaching, we believe Alexander misconstrues the meaning of "outcome-determinative." As the Eleventh Circuit Court of Appeals has explained, the *Strickland* Court "considered making the prejudice standard whether counsel's deficient conduct 'more likely than not altered the outcome in the case,' which would have required a defendant to show by a preponderance of the evidence that counsel's errors had determined the outcome," "[b]ut the Court rejected that 'outcome-determinative standard' as 'not quite appropriate.'" *United States v. Watkins*, 10 F.4th 1179, 1183 (11th Cir. 2021) (quoting *Strickland*, 466 U.S. at 693-94).

> Instead, the *Strickland* Court decided on a lesser showing, holding that: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." And in the very next sentence, the Court helpfully provided this definition for its term of art

phrase: "A reasonable probability [of a different result] is a probability sufficient to undermine confidence in the outcome."

*Watkins*, 10 F.4th at 1183 (alteration in original; citations omitted).

¶28 In *Sholar*, our own state supreme court confirmed that *Strickland* standard, observing "that a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *Sholar*, 381 Wis. 2d 560, ¶44. Thus, rejecting an outcome-determinative standard does not mean rejecting any consideration of the outcome of the proceeding. It simply means that we do not require the defendant to prove that the outcome would "more likely than not" be different. *See id.*

¶29 Furthermore, while not clear, it appears that Alexander may also misapprehend the *Strickland* standard by focusing on whether counsel's deficient performance undermined confidence in the outcome of the proceeding as the key determination. However, that is only part of the analysis. The *Strickland* standard asks us to "evaluate whether 'there is a [probability sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Sholar*, 381 Wis. 2d 560, ¶33 (quoting *Strickland*, 466 U.S at 694); *see also* *State v. Domke*, 2011 WI 95, 337 Wis. 2d 268, ¶54 805 N.W.2d 364 ("It is not sufficient for the defendant to show that his counsel's errors 'had some conceivable effect on the outcome of the proceeding.'" (citations omitted)). In the context of a sentencing after revocation, that test requires Alexander to demonstrate that, absent defense counsel's deficient performance, there is a reasonable probability that the result of the sentencing after revocation would have been different. *See Sholar*, 381 Wis. 2d 560, ¶33; *Benson*,

16

344 Wis. 2d 126, ¶19. For the foregoing reasons, we conclude Alexander has not met this burden.

> *By the Court.*—Judgment and order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.